Bass v. Mitchell.

## A. T. Bass v. Eli Mitchell.

The deposition of the Commissioner of the General Land Office, is not admissible, to prove a matter of fact shown by the records of his office.

The report of a surveyor, appointed by the court, in cases where the right or title to land comes in question, is evidence, (Hart. Dig. Art. 3222;) but, certainly, not conclusive, as to its coincidence with, and establishment of, the calls in the deed; and countervailing evidence may be introduced upon the trial of the cause.

It is error, to make a call for a corner, which has not been found, the controlling call, when established corners and lines of the surveys, actually traced upon the ground, are found to correspond with the calls of the deeds.

Where conflicting and contradictory calls are found in a deed, the most material and certain call must prevail; but where there is no discrepancy in the calls that are found and established, there is no occasion to resort to construction.

Appeal from Gonzales. Tried below before the Hon. Fielding Jones.

Suit by appellant, against appellee, of trespass to try title for about thirty acres of land, being a narrow strip of land, of one hundred varas in width, running from the Guadalupe river, back to the line of the inner town tract of the town of Gonzales, and between labors Nos. 1 and 2.

This land, appellant contended, was reserved and set apart previous to the grant of said labors, in the year 1831, by the proper authorities, for a national road; that the same remained vacant public domain, until appropriated by him, in 1855; and that said strip, so reserved for the national road, was called for as a boundary, in the grants of labors Nos. 1 and 2.

Upon the trial, appellee introduced in evidence, a patent for the land described in his petition; a plat of the different surveys, made by a surveyor, [who, it seems, had been appointed by the court to survey the premises, though there was no order of survey, or report by him, in the record. REPS.] which showed, when the surveys were commenced at the point indicated by the appellant, there would be a strip of one hundred varas in width, between the labors Nos. 1 and 2. He also offered in evidence, the deposition of the Commissioner of the General Land Office, to prove, from the records of his office, that previous to the appropriation of the same by the appellant, there had been a strip of one hundred varas of vacant land, between said labors. He also offered to prove by a witness, Alex. Hilliard, that the south-east corner of the inner town of Gonzales, could not be found; and whether the same could or not be definitely established; and whether the witness did not know, from actual surveys, that there was a space between said labors Nos. 1 and 2. This testimony was excluded by the court, upon the appellee's objection, that evidence could not be received to contradict, or explain and reconcile, the two surveys made by the surveyor appointed by the court, and that the testimony was inferior to that of the said surveyor.

Appellee offered in evidence certified translations from the General Land Office, of the titles for said labors Nos. 1 and 2, from which, it appeared, that No. 1 was bounded as follows: "Situate on the Guadalupe river, joining the town tract, begin-"ning on the south line of said tract, where a stake was set "forming a corner with the national road, leading to the cross-"ing of the river; thence with said boundary, S. 70° W. 413 "varas, to the bank of the river, where a stake was set, from "which a Pecan, 24 inches in diameter, bears S. 26½° W. 12 "varas; thence with the meanders of the river 2460 varas, to "a permanent land mark; thence to the beginning point, with "said road, and running toward the town, N. 20° W. 1730 "varas." And that No. 2 was bounded as follows: "Situate join-"ing the town, on the N. E. bank of the Guadalupe river, on

"the east side of the national road from this town; beginning
"at the south-east corner of the map of said town, where a
"stake was set; thence with its boundary, to strike the said
"road S. 70° W. 667 varas; thence with the said road S. 20°
"E. 1750 varas, to the bank of the river, where a stake was
"set, from which a Box Elder, 9 inches in diameter, bears N.
"18° E. 3 varas, and an Elm 6 inches in diameter, bears S. 7°
"E. 4 varas; thence with the meanders of the river downwards,
"910 varas, to the corner of labor No. 3; thence to the begin-
"ning point, N. 20° E. 1300 varas."

Appellee also introduced the plat of the surveys, made by
the surveyor appointed by the court, commencing at the point
indicated by him as the south-east corner of the map of the
said town of Gonzales, showing that, commencing at said point,
and running according to the calls in the title, for course and
distance, labor No. 2 would lap on to No. 1 about seven or
eight varas.    He then introduced the surveyor appointed by
the court, who testified, "That he commenced at a known
"corner of the inner town, and ran out the lines, in order to
"find the south-east corner; that the south-east corner of the
"inner town was not defined; that commencing at the south-
"east corner of the inner town, pointed out by defendant, and
"running the line of labor No. 2, he could find no lines nor
"corners; and that labor No. 2, surveyed from this point,
"would lap labor No. 1 seven or eight varas; and the short
"line (the west line) of said labor, which, by the original field
"notes, should have been the shortest, was longest, when sur-
"veyed from this point, owing to the bend in the river; and
"that survey for labor No. 2, from this point, would not meet
"by 50 varas; that he had, in making the survey, three certi-
"fied translated copies of the original field notes of labor No.
"2, and they differed somewhat in the translations; that com-
"mencing at the corner pointed out by plaintiff, the north-east
"corner of labor No. 4, he found a stone and a stump, which
"he was satisfied was a bearing tree, as called for in the field
"notes; that following this, by the calls of the field notes of

"labor No. 4, he found a line distinctly marked, which he was
"satisfied was the original line of labor No. 4; that he traced
"it to the river, but could find no corner, as it probably had
"been washed up by the river. Tracing the lines of labor No.
"4, from this line, by the field notes, he found the corner of
"labor No. 3, marked by a stone; running out labor No. 3, by
"giving it its proper width upon the line of the town, and run-
"ning out labor No. 2, according to the original field notes,
"and commencing at the beginning corner of labor No. 1, on
"the river, which he found, and running it out by the field
"notes, gave each labor its proper quantity of land, and cor-
"responded with all the marked lines and corners that he could
"find, and left 100 varas, in width, between labors Nos. 1 and
"2, for the national road. That when he first came to the
"country, in 1837 or 1838, he remembered having seen two
"blazed lines running from the town line to the river, seventy
"or eighty yards apart, (he thought between labors Nos. 1 and
"2,) which he was told was the national road; and defendant
"pointed out to him the place where the east line of the national
"road, or blazed line, struck the river, as the corner of labor
"No. 2, and there was a corner and bearing trees then, but
"they have been lost or destroyed, so that he could not find
"them; that commencing at any point, labor No. 3 could not
"be run out by the field notes, without crossing the river two
"or three times; that commencing at the corner pointed out
"by defendant, for labor No. 2, and surveying all the labors,
"according to their field notes, would make labors Nos. 1 and 2
"lap seven or eight varas, and give Nos. 3 and 4 a hundred varas
"too much in width; that establishing the south-east corner of
"the town, where he did, to commence the survey for defendant,
"made the inner town tract contain a million square varas less
"than the amount it was originally intended to contain; that
"that part of the inner town, was surveyed and laid off by him
"in 1838; that commencing at the north-west corner of labor
"No. 1, a known corner, and running it out, according to the
"calls in the field notes, and leaving one hundred varas for the

"national road, commencing at the corner of labor No. 2, and "running it out by the calls of the field notes, and running out "labors Nos. 3 and 4, according to their field notes, gave each "labor its proper quantity of land, made the lines of the labors "correspond with each other and with the national road, and " left the one hundred varas in width, claimed by the plaintiff; "that the field notes of labors Nos. 2, 3, and 4, in the "original grants of the labors, called for each other; and the "field notes of labor No. 2, for the east line of the national "road; and the field notes of labor No. 1, for the west line of "the national road; that the corner of the town tract, when "the grant to labor No. 2 was made, was three or four miles "from the place where he commenced the survey for defendant; "that he could not find the original corner of the inner town, " but he was satisfied that he had found very nearly to it, as "established by him in 1838, and he understood it had been "previously established; that defendant had a house on the "land claimed by the plaintiff, in 1838, or very near it, but "did not think he had any of it enclosed; that all of the old "surveys, on the river, seemed to have been inaccurately made. "There is some controversy as to where the original corner of "the inner town was: he thinks he found, within a few varas, " of where he established it in 1838, and where it was reputed "to be."

Upon the trial, the court instructed the jury, "That the title "introduced by the plaintiff, would be a good and valid title, " and you should find for him the land described in his petition, "unless you believe that, taking the south-east corner of the "town tract, as the beginning corner of labor No. 2, (and we " charge you that is the true beginning,) and running out the "courses and distances of said labor No. 2, would conflict with "the title of the plaintiff. If you find there is a conflict, you "should find for the defendant, for we charge you that the title "to the labor No. 2 is the superior title, and you should find "for the defendant."

19

Verdict and judgment for the defendant. Motion by plaintiff for new trial, overruled. Plaintiff gave notice of appeal.

*Parker* and *Miller*, for appellant. The court erred, in refusing to allow Alex. Hilliard, district surveyor, to answer the questions asked him by plaintiff, and in refusing to permit the deposition of S. Crosby, Commissioner of the General Land Office, to go in evidence to the jury : in this, that the said testimony was offered in rebuttal, and would have tended to establish the fact of the existence of the vacancy between labors Nos. 2 and 1, and would have explained the discrepancies between the two surveys made by Bellinger, the surveyor appointed by the court ; and would have established the fact, that the point at which Bellinger commenced the survey for defendant, marked B, was not the true beginning corner of labor No. 2. The surveys made by Bellinger were not conclusive; and parol or other testimony ought to have been admitted, to reconcile and explain, if not to contradict them; and other evidence was surely necessary, in order to prove which of the two beginning points, in these two surveys, was the correct beginning corner. Neither the beginning, nor any other corner of labor No. 2, can be found ; the corner of the town map is not, and cannot be established ; and, therefore, the course and distance, in the calls of the original grant, and in the lines of adjoining surveys, should control. (Hubert v. Bartlett, 9 Tex. Rep. 97.)

The charge of the court evidently misled the jury, and seemed to and did control their verdict. The charge of the court was ambiguous, and seemed to assume that the corner, as pointed out by defendant, for the corner of the inner town of Gonzales, was the original corner of the town, and was the true corner of labor No. 2; and it was so understood by the jury, and controlled their verdict, and thus assumed the very fact in dispute, and left nothing for the jury to find from the evidence. (Sayles's Pr. § 551, and cases cited.)

But the charge of the court was contrary to the evidence, and did not present the case fully and fairly to the jury. The

only fact for the jury to find from the evidence, was, whether there was any space between labors Nos. 2 and 1, and that should have been the charge given them, and the only one. (Sayles's Pr. § 549, and cases cited.)

*Stewart* and *Mills*, for appellee. The first call in the grant to Highsmith, (labor No. 2,) "the S. E. corner of the town map, where a stake was set," &c., was found, by the special surveyor, at or a few varas from the S. E. corner of the town, as he established or found it in 1838. (Transcript, pp. 44, 45.) This cannot be controlled by surveys of labors 3 and 4, because the latter surveys make the beginning corner of labor 2, to commence at a point entirely inconsistent and repugnant with the *first call* of the grant to Highsmith, (labor No. 2,) of the date 4th Aug. 1831. (Anderson v. Stamps, 19 Tex. Rep. 460.)

"The S. E. corner of the map or plat of the town of Gonzales," may be the subject of a call, as any other object; and such a call will control course and distance. Under this rule, what boots it that adjoining surveys have more than their complement; or that, commencing where the surveyor did, (the S. E. corner of the plat of the town,) it would lap labor No. 1 seven or eight varas?

Again, labors Nos. 3 and 4 were not in controversy; their survey could only produce confusion with the jury. Survey B (appellee's survey) was not excepted to by plaintiff in the court below, (Bolton v. Lann, 16 Tex. Rep. 96,) but an examination of labors 3 and 4, particularly the former, shows that one of its calls is for the S. E. corner of the town map, thus agreeing with the first call of labor 2.

What is a boundary, is a matter of law; and hence the court was right, in its charge, that the S. E. corner of the town map or plat, was Mitchell's beginning corner. (Bolton v. Lann, 16 Tex. Rep. 96.)

Nor can that beginning corner be made to yield to the course and distance of labors 3 and 4, or even of labor No. 1. (Id. 112.)

Where the national road is, (alluded to in the survey of labor No. 2,) is now merely conjectural; the plaintiff should have called old residents, if the road had really existed. A road *may* have been contemplated; had it been laid out, its survey could have been produced.

No survey, beginning at the S. E. corner of the map or plat of the town of Gonzales, running S. 70° W. 667 varas, with the town line, can find any national road, as shown by the surveyor, in survey B. (Record 27.)

The call for the road, in labor 2, was not, and cannot be found. Will the court shorten the town line of labor 2, because an imaginary object (the road) cannot be identified or found?

If the town line of labor 2 is curtailed 100 varas, (the width of the alleged belt of land,) what becomes of the distance of its first call? Labor 2, for complement, cannot begin 100 varas east of the S. E. corner of the town map, because *that* is wholly repugnant to the call.

The field notes of labor 2, that is, S. 70° W. 667 varas, must first be changed to 567 varas, before the plaintiff can be right in his view of this case.

Again, the appellant's survey, A, itself shows that that survey of labor 2, begins 100 varas E. of the S. E. corner of the town map, as marked by the surveyor; such is not the call of labor 2.

Could the owner of labor 2, maintain a suit against the owner of labor 3, for those 100 varas, running into labor 3, assuming survey A to be correct? Why, the very first call in labor 2, would show its failure; and that call, of the S. E. corner of the town map or plat, shows manifestly that survey A is not, at least, the true one of labor 2. Of course, the belt of 100 varas wide, can be found between labors 1 and 2, by throwing No. 2, 100 varas E. of its beginning corner.

But survey B shows, which must end the controversy, that the survey of labor 2, as then found, corresponds with the field

notes of the titles, in cornering with the S. E. corner of the town of Gonzales, and in the courses and distances called.

Crosby's evidence was rightly rejected. Bellinger was agreed upon by both parties, as special surveyor; his actual survey, and evidence, were primary proof, unless his survey, B, was excepted to and impeached. What Crosby says is secondary; indeed, Crosby spoke from the face of records in his office; the surveyor, from actual survey; the very fact that he states, made the actual survey necessary.

The same remark is also applicable to the witness, Hilliard. It was his survey that originated the confusion, in part, and on which the patent of plaintiff issued. To have here admitted his evidence, would not have advanced the court a single step in the investigation. He could not have done less, or more, than confirm his former survey.

The court will see, from Capt. Crosby's evidence, (p. 31, Record,) that his very first allusion to labor 2 is an error, taking the first call in the grant of labor 2 as a guide. He says: "fractional labor 2, commences at the N. W. corner of labor No. 3;" which is a grave error, if we glance at the first call of labor 2. Crosby spoke from his record. The court below needed more definite information, and this error shows, that the special surveyor was the most proper witness, unless his survey was first excepted to.

It is sufficient to say, that the plaintiff failed to make out his case in the court below.

WHEELER, CH. J. It is scarcely necessary to say, that the deposition of the Commissioner of the General Land Office, was not admissible to prove the records of his office. But it was certainly competent to prove, by the witness, Hilliard, or any other witness, who was in possession of competent information of the fact, whether the original south-east corner of the inner town tract of the town, had been, or could be, found and established. The objection to the evidence, appears to have proceeded upon the ground, that the report and testimony of

the surveyor, appointed by order of the court, was conclusive. We do not so regard it. . The report of the survey was evidence; (Hart. Dig. Art. 3222,) but certainly not conclusive, as to its coincidence with, and establishment of, the calls in the deed. (Bolton v. Lann, 16 Tex. Rep. 96.) The testimony of the surveyor could not be anticipated; and surely, it was competent to introduce countervailing evidence upon the trial. But neither in the survey, as returned, nor in his testimony, did the surveyor profess to have found the original corner, but the contrary. He supposed he had approximated it; but not that he had found it. From his testimony, it appears to have become lost; and consequently, it could not be a controlling call in the deed. There was really no occasion to introduce the witness, Hilliard, in order, as it would seem, to disprove that which had not been proved; and his testimony might well be dispensed with, as unnecessary, until some evidence was offered tending to prove where the original corner really was. But the error was, in making this corner, which had not been found, as it was made by the charge of the court, a controlling call. Other material and certain calls were found. Established corners and lines of the surveys, actually traced upon the ground, were found to correspond with the calls of the deeds; and upon clearly settled principles, these must control a call for an object, which was uncertain and unknown. The law upon this subject has been so fully settled in former decisions, as to render unnecessary more than a reference to them. (Hubert v. Bartlett, 9 Tex. Rep. 97; George v. Thomas, 16 Id. 74; Id. 96; Anderson v. Stamps, 19 Id. 460.) If it had been proved, that this corner of the town tract was an established and known corner, when the labors were granted, and it had been certainly found, and was found not to consist with other calls in the deeds, it would then have been a question, whether that or the other calls should govern; and there would then have been occasion for the application of the rule, that the calls which are the most material and certain, shall prevail. But there was no discrepancy in the calls of the deed, or be-

tween the objects called for, and those found upon the ground; but a perfect coincidence. There was, therefore, no uncertainty, requiring a resort to rules of construction; and it would seem, no real difficulty in the law applicable to the case.

We are of opinion, that there was error in the charge of the court, as applied to the evidence, in making the south-east corner of the town tract a controlling call; for which, the judgment must be reversed, and the cause remanded.

Reversed and remanded.