T. B. ADAMS v. J. J. TERRELL, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 1766.   Decided February 12, 1908.

School Land—Purchase—Settlement—Abandonment—Forfeiture.

Under the Act of April 4, 1895, forfeiture of a purchase of school land for failure of the purchaser to reside thereon as required must be effected by a declaration of such forfeiture by the Commissioner of the General Land Office entered on the records of his office, before the land becomes open to purchase by another applicant. (Pp. 332, 333.)

Original application to the Supreme Court by Adams for a writ of mandamus against the Commissioner of the General Land Office.

*D. E. Simmons,* for relator.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent.

Mr. Chief Justice Gaines delivered the opinion of the court.

This is a petition for the writ of mandamus to compel the Commissioner of the General Land Office to award to relator two sections of school land which he had made application to purchase. George J. Trainer was made co-respondent.

It is alleged in the petition that at a sale on the 24th of November, 1906, by competitive bidding, the co-respondent, Trainer, was the highest bidder for the two sections of land in controversy, and that they were awarded to him; that he settled upon his home section and on the 20th day of December, next thereafter, he forwarded to the Commissioner of the General Land Office his affidavit of settlement as required by law; but that subsequently and prior to December 28, 1906, he abandoned his settlement and removed from the land without the intention of ever returning thereto. It is further alleged that petitioner on the 24th day of December, 1906, made application to purchase the two sections complying in all respects with the requirements of the law pertaining thereto; that his applications were filed on the 29th day of December, 1906, and were rejected, for the reason that ninety days had not elapsed from the time the lands were awarded to Trainer.

To the petition the Commissioner of the General Land Office has simply filed a general demurrer, and the corespondent, Trainer, though served with process, has filed no answer.

The petition showing that the abandonment of the land "was prior to the 28th of December, 1906," and the applications being dated December 24, 1906, and the rule being to take the allegations of the pleading most strongly against the pleader, it appears that the applications were signed and sworn to before the abandonment. It would seem therefore that they were premature, although they did not reach the Land Office until December 29, 1906. But we do not find it necessary to decide the question, and will treat the applications in all respects as being regular.

The question then arises, upon the nonoccupancy of free school land by a purchaser, does the land *ipso facto* become subject to sale without any action on part of the Commissioner of the General Land Office? The act of the 4th of April, 1895, contains this provision: "If any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, in the same manner as for nonpayment of interest, and such land shall be again for sale as if no such sale and forfeiture had occurred." (Laws 1895, p. 67.) The act of April 19, 1901, provides that, "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the State, to the same extent as for nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon

the market without any action whatever on the part of the Commissioner of the General Land Office." (Laws 1901, p. 294.) The law of 1895 provides for a forfeiture for nonoccupancy "in the same manner as for nonpayment of interest." That is, the Commissioner shall declare the forfeiture and enter the declaration upon the records in his office. Under the law of 1901, the forfeiture is to be "to the same extent as for nonpayment of interest." The expression is unusual and somewhat obscure. "Extent" does not ordinarily mean "manner." But is a forfeiture *ipso facto* and a forfeiture by the Commissioner by entry upon his records a forfeiture to the same extent? We think not. The former which becomes immediately effective upon the happening of the event is more extensive in its operation, than a forfeiture which does not become operative until the Commissioner has acted. The words, "all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office" gives rise to some difficulty. This merely tells us what is to be the effect of the forfeiture; but throws no light upon the question, how is the forfeiture to accrue? If, as we have seen, by the written declaration of the Commissioner, then the consequence is to follow. So that we think the words should be construed as if they read "all forfeitures when declared by the Commissioner shall have the effect," etc.

Does any reason suggest itself why it should be necessary to a forfeiture for nonpayment of interest, that the Commissioner should enter it on the account and why a like method should not be adopted in case of a forfeiture for non-occupancy? None presents itself to our minds. On the contrary, it would seem since the accounts with the purchaser are kept in the Land Office and since they will necessarily show the fact in case the interest is not paid, there is less reason for declaring the forfeiture in that case, than in case of nonoccupancy, where there is no public record to show the fact.

Because the Commissioner had not declared the land forfeited when relator filed his applications, the writ of mandamus is refused.