### GATTISON et al. v. MEYER et al. (No. 3413.)*

Court of Civil Appeals of Texas. Texarkana. June 13, 1927.

Rehearing Denied June 30, 1927.

1. **Public lands** ⊜172(8)—Mere failure of purchaser of state lands to make annual payments does not forfeit title (Rev. St. 1911, art. 5423).

In view of Rev. St. 1911, art. 5423, the mere failure of a purchaser of public lands from the state to make the annual payments does not operate ipso facto to forfeit title.

2. **Public lands** ⊜172(8)—Statutory provision, that to constitute forfeiture of public lands words "land forfeited" must be entered on file wrapper and purchaser's account, is mandatory (Rev. St. 1911, art. 5423).

The provision of Rev. St. 1911, art. 5423, that, when interest on obligation incurred in purchase of public lands remains unpaid, commissioner of land office shall indorse on such obligation "Land forfeited" and cause entry to be made on purchaser's account, is mandatory and, unless strictly complied with, land cannot be forfeited and resold.

3. **Evidence** ⊜342—Certified photographic copy of purchaser's account in land office must be assumed correct reproduction, at date on certificate, of all prior entries (Rev. St. 1911, art. 3696).

Photographic copy of account of purchaser of public lands, certified to by land commissioner, must be assumed a correct reproduction of the account and all entries made thereon prior to the date of the certificate, in view of Rev. St. 1911, art. 3696, making certified copies of records of the land office primary evidence.

**4. Evidence ⟷383(3)—Certified copy of book entries in land office held entitled to as much credence as original books (Rev. St. 1911, art. 3696).**

Under Rev. St. 1911, art. 3696, making certified copies of records in the land office primary evidence, a certified copy of book entries in the land office is entitled to as much credence as the original books themselves if offered as proof of their contents.

**5. Evidence ⟷177—Parol testimony of book entries in land office is admissible only when primary evidence provided for by statute is unavailable (Rev. St. 1911, art. 3696).**

Parol testimony of book entries in the land office is treated as secondary evidence and is admissible only when certified copies of the book entries, made primary evidence by Rev. St. 1911, art. 3696, are unavailable.

**6. Trial ⟷105(5)—Where primary evidence of contents of official record and secondary evidence, inadmissible if objected to, conflict, primary evidence prevails.**

Where there is a conflict between primary evidence of the contents of an official record and secondary evidence, inadmissible if objected to but admitted without objection, the primary evidence should prevail.

**7. Evidence ⟷265(5)—Where deposition of clerk of land office conflicted with certified photographic copy as to whether purchaser's account was indorsed "Land forfeited," copy held conclusive (Rev. St. 1911, art. 3696).**

Where the deposition of the chief clerk of the general land office conflicted with a certified photographic copy of book entries as to whether the account of a purchaser of public lands was indorsed "Land forfeited," the certified copy, being primary evidence, was *held* to prevail, in view of Rev. St. 1911, art. 3696.

**8. Public lands ⟷179—Statutes that any one claiming right to purchase public lands must bring suit within year held inapplicable to defendants claiming former purchase had not been forfeited (Rev. St. 1911, arts. 5458, 5459).**

Rev. St. 1911, arts. 5458, 5459, providing that persons claiming right to purchase public lands must bring suit, within year, and if suit was not brought it should be conclusive evidence that all requirements of sale or lease of such lands had been complied with, *held* inapplicable to a suit to try title where the defendants were claiming land under a former purchase which had not been legally forfeited and resold to plaintiffs.

*On Motion for Rehearing.*

**9. Public lands ⟷173(21)—Statute making sale awards of forfeited public school lands, declared void by Supreme Court, valid held inapplicable, where defendants' lands sold plaintiff were never legally forfeited (Rev. St. 1925, art. 5311b).**

Rev. St. 1925, art. 5311b, providing that, where public school land had been declared forfeited and the land awards held void by the Supreme Court, such land awards "are hereby validated," *held* inapplicable in a suit to try title where the defendants' lands, resold to plaintiff, had never been legally forfeited.

Appeal from District Court, Marion County; R. T. Wilkinson, Judge.

Suit in form of action of trespass to try title by Ed Meyer and another against Amy Gattison and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

I. C. Underwood, of Marshall, for appellants.

Schluter & Singleton, of Jefferson, for appellees.

HODGES, J. This is an action by the appellants for title and possession of a tract of 320 acres of land situated in Marion county, and described as section 4, certificate 92, S. F. I. W. survey. The land originally belonged to the school fund and was sold to L. G. McDuffie in October, 1905. It was classed as dry grazing land, and valued at $1.55 per acre. In 1906 McDuffie conveyed his interest in the land to Jeff Gattison, whose widow and children are the appellants in this suit. Gattison was substituted as the purchaser and executed a contract which was accepted by the commissioner of the general land office. He went into possession of the land, built a house thereon, cleared several acres, and used the place as his homestead until his death, which occurred some years before this suit was filed. After his death his widow and children have continued to reside upon and cultivate the land, and for several years made the annual payments required by law. The record in the land office shows that the payments were made up to and including November 1, 1918. According to that record, no other payments were made by the Gattisons, and no others tendered, till after this controversy arose. The account in the general land office shows that the net amount due and unpaid on November 1, 1922, was $58.08. On August 31, 1923, the commissioner attempted to declare the land forfeited for nonpayment of the annual interest, and again put it on the market for sale. On October 15, 1923, it was sold by him to E. Meyer for $5 per acre. In April, 1924, Meyer conveyed a half interest to L. G. Braden. During the following year Meyer and Braden filed this suit in the form of an action of trespass to try title. As evidence of their ownership they rely upon the purchase from the state, above referred to. Appellants, defendants below, answered by a plea of not guilty, and specially pleaded, among other things, the purchase by Jeff Gattison from the state, and that there had never been any valid forfeiture of their title by the commissioner of the general land office. A jury had been impaneled to try the case, but after hearing testimony the jury was discharged, appar-

'ently with the consent of all parties, and the issues of fact as well as of law were submitted to the court, who rendered a judgment in favor of the appellees.

[1] Several reasons are presented in the appellants' brief for a reversal of the judgment, but we shall discuss only one—the sufficiency of the evidence to support the conclusion of the court upon the controlling issue of fact. It conclusively appears that Gattison went into possession in 1906 under a valid contract of purchase from the state. The equitable title thus acquired would remain in him and his wife and children till legally forfeited or conveyed to another. The mere failure of a purchaser from the state to make the annual payments does not operate to ipso facto forfeit the title. Erp v. Tillman, 103 Tex. 574, 131 S. W. 1057; Adams v. Terrell, 101 Tex. 331, 107 S. W. 537.

[2] The statute (article 5423 of Rev. St. 1911) provides:

"If upon the 1st day of November of any year any portion of the interest due on any obligation remains unpaid, the commissioner of the general land office shall indorse on such obligation, 'land forfeited,' and shall cause an entry to that effect to be made on the account kept with the purchaser; and thereupon said land shall thereby be forfeited to the state, without the necessity of re-entry or judicial ascertainment and shall revert to the particular fund to which it originally belonged, and be resold under the provisions of this chapter, or any future law."

It is now settled that, in order to constitute a forfeiture, the commissioner must strictly comply with that requirement and enter the words "Land forfeited" on both the file wrapper referred to in the statute and the account kept with the purchaser on the books of the land office. Chambers v. Robison, 107 Tex. 315, 179 S. W. 123. Until that is done the land does not revert to the state and is not subject to resale.

The important question in this appeal is, Was there a legal forfeiture of the equity acquired by Gattison in his purchase from the state? The judgment involves a finding by the trial court that there was. Appellants contend that the evidence does not warrant that conclusion, because it conclusively appears that no forfeiture was entered upon the account as required by the statute above quoted. The testimony upon that issue is found in the deposition of J. H. Walker, chief clerk of the general land office, and photographic copies of the indorsements made in the land office on the file wrapper and the entries in the account, which was kept with Gattison, the purchaser. Walker testified as follows:

"A list of all lands delinquent in interest payments was made in the spring of 1923, which list included said section 4. Notices of delinquency and impending forfeiture to the claimants of the land through the person or persons remitting the last interest payments were mailed. A list of the lands delinquent was printed and circulated. The files were withdrawn from their receptacles, which was done the latter part of August, 1923. On the 31st of August, 1923, the files were taken up one by one and each compared with the account kept with it: and in cases where the interest had not been paid, the file wrapper was stamped with a rubber stamp reading 'Land forfeited August 31, 19—, ———, Com'r,' and passed to the Commissioner, Mr. J. T. Robison, who added the figures '23' to the stamped '19—,' and signed on the dotted line, making the indorsement read: 'Land forfeited August 31, 1923, J. T. Robison, Com'r,' and at the same time the indorsement to show forfeiture was made on the account."

The certified copy of the file wrapper introduced in evidence showed this indorsement: "Land forfeited August 31, 1923. J. T. Robison." A photographic copy certified to by the land commissioner was offered in evidence for the purpose of showing that no forfeiture had been indorsed on the account. That copy shows credits for interest payments up to and including November 1, 1918, aggregating $189.32. It also shows a balance of $58.08 interest due on November 1, 1922. There is no indorsement of forfeiture in any form appearing upon the certified copy of the account offered in evidence. The commissioner's certificate recites that this is a true and correct copy of the original instrument on file in his office, "together with all indorsements thereon." The certificate is dated June 6, 1924.

[3-7] There is a clear conflict between the testimony of Walker and the certified copy of the account offered in evidence. The question is, Which should control? We must assume that the photographic copy is a correct reproduction of all the entries made on the account up to June 6, 1924, a date later than the purchase by Meyer. We must also assume that all the entries theretofore made upon the account remained and were upon the books at the time this certified photographic copy was made. We then have a true facsimile of the account and all the entries thereon from its beginning till June 6, 1924. A certified copy of the book entries is entitled to as much credence as the original books themselves if offered as proof of their contents. Article 3696, Revised Civil Statutes of 1911, makes certified copies of records of the land office primary evidence. Parol testimony is treated as secondary evidence and is admissible only when the primary evidence provided for by statute is unavailable. Clayton v. Rehm, 67 Tex. 53, 2 S. W. 45; Bass v. Mitchell, 22 Tex. 285; Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Meyer v. Hale (Tex. Civ. App.) 23 S. W. 990; Bradford v. Brown, 37 Tex. Civ. App. 323, 84 S. W. 392. When it comes to a conflict between primary evidence of the contents of an official record and secondary evidence, inadmissible if objected to but admit-

.(297 S. W.)

ted without objection, the former should prevail. Walker was undertaking to detail what occurred in a group of transactions several years prior to the time he testified. He might have been mistaken. Evidently he depended upon his memory, if not upon a custom followed in the land office. He does not say that he made those entries, but that they were made. We are therefore of the opinion that the attempted forfeiture of the Gattison purchase was invalid, and that the land was not subject to resale at the time it was awarded to Meyer.

[8] Counsel for appellees, however, rely upon the following articles of the Revised Civil Statutes of 1911:

"Art. 5458. All persons claiming the right to purchase or lease any public free school lands, or any lands belonging to the state university, or either of the state asylums, which have been heretofore, or which may be hereafter, sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after the date of the award of such sale or lease, and not thereafter.

"Art. 5459. If no suit has been instituted by any person claiming the right to purchase or lease any of said land within the period of time limited in the foregoing article, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with: provided, that nothing in this and the preceding article shall be construed to affect the state of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

But we do not think that statute has any application to the main defense presented in this case. Whitaker v. McCarty (Tex. Com. App.) 221 S. W. 945; Kirby v. Conn (Tex. Civ. App.) 156 S. W. 232; Herndon v. Robison, 114 Tex. 446, 270 S. W. 159. As stated by the court in the Whitaker Case:

"The act was intended to apply, and in terms clearly does apply, only to cases in which persons claim the right to purchase or lease land which has already been sold or leased to others."

If in this case the appellants were relying upon their superior right to repurchase after a valid forfeiture of the former purchase, Meyer might well plead that his purchase had been recognized for more than one year. Under those conditions the situation would be similar to that passed upon in Herndon v. Robison. While it is true one of the defenses presented by the appellants is their prior right to repurchase, they also deny that there was any legal forfeiture of their first purchase. If the conclusion that there had never been any valid forfeiture of the Gattison title is correct, the land was not subject to sale by the commissioner to any one. It was not a part of the public domain. Appellants are claiming under a purchase which is many years older than that under which the appellees claim. It would be absurd to say that a claim based upon a purchase a little more than a year old should prevail over one more than ten years old. If the statute is available to appellees, why is it not also available to the appellants, when it is shown that the continuity of their prior claim has never been broken?

In the present state of the record we can do no more than reverse the judgment of the trial court and here render judgment that the appellees take nothing by their suit. It is accordingly so ordered.

On Motion for Rehearing.

[9] Counsel now call attention to article 5311b of the Revised Statutes of 1925 as authority for the contention that appellees' title, though defective, had been made valid at the date of the trial below. That article is a part of an amendment adopted by the Legislature in March, 1925. The material portions of the article are as follows:

"In cases where public free school and asylum land has been advertised as being subject to forfeiture for nonpayment of interest and to be forfeited and canceled and come on the market for sale at some future sale date and such land was declared forfeited and the sale canceled on the records of the general land office and sale awards issued upon applications filed at such sale date, and said sale award has been held by the Supreme Court to be void and all other sale awards which may be void or voidable or the titles to which may have become defective from any cause, are hereby validated, and when the said land shall be fully paid for together with payment of all fees it shall be patented."

That statute, we think, has no reference to lands which had been purchased at a valid sale, and which had not previously been legally forfeited by the commissioner of the general land office.

The motion is overruled.