## R. A. Flannagan v. J. R. Nasworthy et al.

### No. 270.

**1. Immaterial Error—Trespass to Try Title by Tenants in Common.**—Action in trespass to try title by two tenants in common. Title of one was clear, that of the other disputed; defendant exhibited no title. *Held*, on appeal by defendant from a judgment for the land in favor of both the plaintiffs, that inasmuch as one tenant in common could recover against a trespasser, it was immaterial whether both plaintiffs showed title or but one.

**2. Classification of Public School Lands.**—The order of the Commissioners Court of Tom Green County approving the appraisement of the public school lands by the county surveyor under the law of 1881, if adopted by the Land Board as a basis for its action, was perhaps a sufficient compliance with the third section of the Act of April 12, 1883.

**3. Validating Act of March 12, 1889.**—The validating Act of March 12, 1889, is not unconstitutional, or forbidden by section 4, article 7, of the State Constitution, in granting relief to purchasers of public school lands.

**4. Case Adhered to.**—Barker v. Torrey, 69 Texas, 7, adhered to.

**5. Evidence Competent—Irregular Purchase of Public School Land.**—To exclude the application to purchase and the award of the Land Board because there was no sufficient classification of the land (if such was the fact), or because the sale was not made at the place required by law, would be to deny to the holder of such land the right to show that the purchase, though irregular, was validated by said Act of March 12, 1889.

**6. Same.**—Whether a description of the land given in the application to purchase was in conformity with the rules and regulations of the Land Board, is a question of fact, and not of law to be decided by the court upon the admissibility of evidence.

**7. Purchaser of School Land in Good Faith.**—The trial court correctly interpreted the statute in question in instructing the jury that if the purchaser had reasonable ground to believe and did believe that the description of the land contained in his application to purchase was true, then he acted in good faith.

**8. Good Faith as Used in the Validating Act.**—The words *good faith*, as used in said law, signify that the State will shield and protect the honest purchaser of its lands, though he may have made a mistake in the description given thereof.

**9. Agricultural Lands—Pasture Lands.**—Upon charge of fraud in a purchase of public school lands, represented to be pasture lands instead of agricultural, evidence of the quality of soil adjoining, and cultivated, is competent; also the kind of seasons prior to and at the time of the application to purchase.

**10. Charge.**—It is ordinarily sufficient for the charge of the court to inform the jury what the issues for their determination are, without attempting to explain what are not issues. Such attempts may impress upon the jury the belief that the court entertains certain views as to the weight of evidence, and so be upon the weight of testimony. See example.

**11. Burden of Proof.**—The burden of proof lies upon the purchaser to show the facts placing his claim under the relief law, and to show that the purchaser acted in good faith in his transactions constituting his purchase.

Appeal from Tom Green. Tried below before Hon. J. W. Timmins.

*Scott, Jenkins & McCartney*, for appellant.—1. The pretended sale by the Land Board being illegal, and purchaser not having complied with the terms of the law, the Legislature had no power to relieve him. The sale was contrary to law, in that there was no classification, no appraisement, and no sale in the county where the land was situated. The State v. Opperman, 74 Texas, 136; Martin v. McCarty, 74 Texas, 128; Const. 1876, art. 7, sec. 4; Const. 1866, art. 10, sec. 4.

2. The admission of immaterial evidence over defendant's objection, calculated to mislead the jury, is reversible error. The rules of the Land Board required the applicant to describe the land sought to be purchased, and that the sale should be void for misrepresentation or false description. Nasworthy, in his application made December 23, 1883, described the land as "fit only for pasture." Act April 12, 1883; Rules Land Board, Oct. 23, 1883; Act March 12, 1889, Gen. Laws, 106.

3. The court erred in refusing to allow the defendant to prove the depth of soil on land adjoining said section and what had been raised on land adjoining the same. The evidence was admissible as a circumstance to prove the character of the soil on the survey in controversy and its adaptability to agriculture.

4. He who claims under a healing act must bring himself strictly within the provisions thereof.

*Cochran & Hill*, for appellees.—1. The lands were properly classified under the Act of 1881, and such classification was sufficient until changed by the Land Board under the Act of 1883. The Act of 1883 permitted the Land Board to make rules with reference to the classification of school lands, and to provide for placing same on the market. The Land Board, by its rule of October 23, 1883, prescribed rules for the classification of land, and for sale of the same, and for placing the lands on the market. Laws 1881, 119, 120; Laws 1883, secs. 3, 6, 7, pp. 85–87; The State v. Opperman, 74 Texas, 136; Neville v. The State, 11 S.W. Rep., 868.

2. Appellee Nasworthy in good faith made his purchase of the land, and in good faith complied with the rules and regulations of the State Land Board. For this reason the alleged defects in his title are cured, and he is entitled to the benefit of the healing Act of March 12, 1889. Laws 1883, 83–89; Act March 12, 1889.

3. The healing Act of 1889 ratified purchases made in good faith under the rules and regulations of the Land Board. The Legislature ratified this sale, and such ratification was legal and was not prohibited by the Constitution. Const. 1876, art. 7, sec. 4; Laws 1889, 106; Barker v. Torrey, 69 Texas, 7; Blum v. Looney, 69 Texas, 3.

4. The law does not define what constitutes good faith. Good faith is a question of fact for the jury. Any instruction upon what is good faith would have been a charge on the weight of evidence. If appellee desired

further instruction upon good faith, he should have asked it. Failure of court to more fully present the question is not reversible error if no charge is asked. The jury understood what was meant by good faith, and the charge fully presented the issue of good faith.

KEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by appellees J. R. Nasworthy and the San Angelo National Bank, against appellant, R. A. Flannagan, to recover section 182 of the public free school lands, located by virtue of Washington County Railroad scrip.

Appellees claim the land by virtue of a sale made to said Nasworthy in January, 1884, at Austin, Texas, by the Land Board; appellee the San Angelo National Bank claiming a one-half undivided interest by mesne conveyance from said Nasworthy.

Appellant pleaded not guilty, and in reconvention for damages for the wrongful and malicious suing out of a writ of sequestration.

There was judgment for appellees for the land, and that appellant was not entitled to recover damages.

It is contended that there was error in admitting in evidence the appointment in writing of J. T. Talbot as substitute trustee to sell an undivided interest in the land in controversy to pay a debt due the San Angelo National Bank, said appointment purporting to be for and in behalf of said bank, by M. B. Pulliam, as president, it not being made to appear by evidence that Pulliam, as president, was authorized to make such appointment either by the board of directors or the rules, regulations, or charter of the bank, nor that the board of directors had ever ratified said appointment.

It appears that one Upton once owned an undivided half-interest in the land, and executed a deed of trust thereon to secure a debt to the San Angelo National Bank, in which William E. Ellis was named as trustee. This deed of trust provided that in the event of the failure of Ellis to act as trustee the bank might appoint a substitute. Ellis died, and M. B. Pulliam, signing his name as president, appointed J. T. Talbot as substitute trustee, who sold the land under the deed of trust, and at the sale the bank became the purchaser.

We deem it unnecessary to determine whether or not the appointment of Talbot as substitute trustee was the action of the bank or of Pulliam only; because if the bank, as purchaser at the sale made by Talbot, acquired no title, then appellee Nasworthy is a tenant in common with Upton, and, as against appellant, is entitled to recover if he has acquired title to the land through his purchase from the State.

Appellant contends that appellees' title to the land in controversy is fatally defective:

1. Because there was no classification of the school lands in Tom Green County, as required by the Act of April 12, 1883.

2. Because the land was not sold in the county where it was situated, as required by said act.

3. Because Nasworthy did not correctly describe the land in his application to purchase, as required by the rules and regulations of the Land Board.

It was shown that the school lands of Tom Green County were not classified under the Act of April 12, 1883; but the order of the Commissioners Court of said county approving the appraisement of these lands by the county surveyor, under the law of 1881, if adopted by the Land Board as a basis for its action, was perhaps a sufficient compliance with the third section of the Act of April 12, 1883, in reference to the classification of school lands. But the sale of the land in question by the Land Board at Austin, Texas, instead of in the county where the land was situated, was in violation of the sixth section of said act; and for this reason, in the absence of curative legislation, the sale of the land to Nasworthy by the Land Board was void and conferred no title. Martin v. McCarty, 74 Texas, 128; The State v. Opperman, 74 Texas, 136.

The case of Martin v. McCarty was decided in December, 1888, and the Twenty-first Legislature, which met in January following, passed an act validating certain acts of the Land Board. This last act was approved March 12, 1889 (page 106, Laws of 1889), and in so far as it applies to this case, reads as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas: That all contracts made by the Land Board of the State of Texas for the sale of the free school, university, and asylum lands 'under the Act of April 12, 1883, to any person who has in good faith made such purchase, and in good faith has complied with the requirements of said act, the rules and regulations of the State Land Board, and the terms and conditions of his said contract, shall be and are hereby made valid and binding upon the State in the same manner as if the said Land Board had in all particulars complied with the requirements of the said law."

The appellees contend, that whatever irregularities or omissions there may have been in the proceedings of the Land Board in the sale of the land involved, the same are cured and the sale of the land validated by this act.

We concur in this construction to the extent of holding, that if the healing act referred to is not unconstitutional, the purchase of the land in controversy by Nasworthy was validated, if he in good faith complied with the Act of April 12, 1883, the terms of his contract, and the rules and regulations of the Land Board.

We doubt not that the decision in the case of Martin v. McCarty, already referred to, affecting as it probably did many purchases that had

been made from the Land Board, was the reason impelling the Legislature to pass the act in question.

It is contended, however, by appellant, that the validating Act of March 12, 1889, is forbidden by section 4, article 7, of our State Constitution, which declares that the Legislature shall have no power to grant any relief to purchasers of lands set apart to the public free school fund.

Our Supreme Court has construed this provision of the Constitution in the case of Barker v. Torrey, 69 Texas, 7, in which an act of the Legislature, as much in the nature of "relief" as the one now under consideration, was involved.

In that case the Act of February 16, 1885, extending the time of forfeiture of the land for nonpayment of interest from March to August, was held to be valid, and not in contravention of the Constitution; and in the opinion it is said: "Notwithstanding that statute, the obligation of the purchaser to pay both principal and interest in strict accordance with his contract and the law under which it was made, continued; and the State, like any other creditor, could enforce all rights and claims which would ordinarily legally grow out of the fact that the interest was not paid on the very day it became due and payable. The statute did not release the purchaser from any obligation arising from the contract or its breach. The effect of the statute was, while leaving the purchaser fully bound, to suspend the right which the State had to cancel the contract and thus to forfeit the right of the purchaser to have the executory contract carried out if the annual interest was not paid on or before the first day of March."

The Legislature being clothed with the power to create the Land Board, and to authorize it to make rules and regulations for the sale of the school lands, thereby making the board the agent of the State to sell the lands, it also had the power to ratify the acts of its agent done contrary to or in excess of the authority conferred. The board in making the sale of the land was accomplishing the very purpose for which it was created; and the Legislature having created the agent, and being satisfied with its acts and the results accomplished, had the power to sanction and approve such acts and legalize the contract entered into between the purchaser and the State through such agent; though the agent had, in the manner of making the contract, departed from certain mandatory provisions of the law creating the agency. And such approval and ratification, when it does not relieve the purchaser from any of the obligations resting upon him, is not so clearly "relief," as this term is used in the Constitution, as would authorize us to hold that the act in question is forbidden by the constitutional provision above referred to.

The third objection to appellees' title involves the main question in the case. Recognizing that the law cast upon them the burden of showing the facts which would bring Nasworthy's purchase within the class of con-

tracts referred to and validated by the healing act above quoted, appellees put in evidence the following rules of the Land Board, of date October 23, 1883:

" Resolved by the board, that all common school, university, and asylum lands in all the counties of the State are hereby placed upon the market for sale or lease.

" Resolved, that under authority of section 7 of chapter 88, General Laws of 1883, the following is prescribed as the mode of placing said lands on the market:   The application for purchase   *  .*  *   of any of said lands shall be in writing and addressed to the secretary of the Land Board at Austin, Texas; said application shall fully and minutely describe each and every section desired to be bought,   *   *   *   giving number of section, block, and certificate, and name of original grantee, with character of soil, grass, timber, and water, if any, on each section; *   *   *   the price per acre offered for the purchase.   *   *   *   The application must be sworn to before some officer authorized to administer oaths, and the   *   *   *   sale will be regarded as vacated and null for misrepresentation or false description.   *   *   *   The application will be forwarded by the applicant to the Land Board at Austin.   *   *   *   And the same will be considered by the board on the first Tuesday of the following month."

The appellees also introduced the application of J. R. Nasworthy to purchase the land in controversy, as follows:

"SAN ANGELO, TEXAS, December 23, 1883.

" *To the Secretary of the Land Board, Austin, Texas:*

" Under and by virtue of the provisions of an act to provide for the classification, sale,   *   *   *   of the common school lands, approved April 12, 1883, and the resolutions of the honorable Land Board, adopted October 23, 1883,   *   *   *   I hereby apply for the purpose of purchasing the following lands surveyed and set apart for the public school fund (which said land is represented on accompanying sketch), situated in Tom Green County, Texas:

| Original Grantee. | Cert. No. | No. Sec. | No. Blk. | No. Acres | Bid per Acre. | Description. |
|---|---|---|---|---|---|---|
| W. Co. R. R. Co.. | 28–44 | 178 | ... | 640 | $2.94 | Black soil, mixed with grayish limestone, fit only for pasture; no water; no timber fit for lumber or shingles; no minerals; no improvements thereon; mesquite brush. |
| Do.     do.    " | 28–43 | 176 | ... | 640 | $3.00 | |
| Do.     do.    " | 28–46 | 182 | ... | 640 | $5.25 | |

" Respectfully,

" J. R. NASWORTHY."

Which application was properly sworn to, filed with the county surveyor of Tom Green, and forwarded to the secretary of the Land Board at Austin, and there filed as by law required; and it was admitted by the appellant that section 182, the same being the land in controversy, was by the State Land Board, at its first meeting in January, 1884, awarded to J. R. Nasworthy, and that all payments of principal and interest thereon required by law had been paid to date; and that Nasworthy properly executed his note for payment of the residue of the purchase money.

Appellant objected to the introduction of all this testimony, and also to the evidence of Tarver, the county surveyor of Tom Green County, tending to show that the Commissioner of the Land Office, prior to Nasworthy's application to purchase, had authorized him to sell the school lands in that county, under the Act of 1881; appellant contending, among other things, that, without a classification in conformity with the last named act, the Land Board had no authority to sell the land; and as to the application to purchase, that it did not conform to the rules and regulations of said board, in that it did not correctly describe the land sought to be purchased.

We think this testimony, as well as the evidence introduced by appellees showing that in 1883 and 1884 the land in suit was used for pasturage, which was objected to by appellant, was admissible. To exclude the application to purchase and the award of the Land Board showing Nasworthy's purchase, because there was no sufficient classification of the land, even if such was the fact, or because the sale was not made at the place required by the Act of April 12, 1883, would be to deny to appellees the right to show that Nasworthy's purchase is such as was intended to be validated by the Act of March 12, 1889.

Whether or not the description of the land given in the application to purchase was in conformity with the rules and regulations of the Land Board, was a question of fact to be determined by the jury, and not one of law to be decided by the court.

The purpose for which the land was used was admissible, to aid the jury in determining the character of the land—whether agricultural or pasture—and the good or bad faith of Nasworthy in describing it as " fit for pasture only."

Appellant's theory, as gathered from his brief, appears to be, that in order for a purchaser of school or other lands to be protected under the Act of March 12, 1889, he must show, among other things, a strict compliance with all the rules and regulations of the Land Board; and it is contended that the purchase in this case falls short of such compliance, in this, that Nasworthy's application does not give the number of the block of which the survey in question is a part, and that the description of the soil is not restricted to the survey in controversy, but applies equally to two other surveys, sought to be purchased at the same time. It is also

contended that the testimony shows that the description of the land as suitable only for pasture was untrue, the contention being that at the time the application to purchase was made it was agricultural land.

Without expressing any opinion upon the weight of testimony, we believe that the court below correctly interpreted the statute in question when it instructed the jury that if Nasworthy had reasonable ground to believe, and did believe, that the description of the land contained in his application to purchase was true, then he acted in good faith.   If prior to the Act of March 12, 1889, in litigation between the State and Nasworthy, a question of fraud in the description given in his application to purchase had arisen, and it had been shown that, after exercising ordinary care and diligence to ascertain the facts, Nasworthy had described the land in some respects inaccurately, but as he honestly believed was proper and correct, we believe that his title would have been upheld.   In our opinion, the healing act in question was intended to apply to and protect such cases as the one just stated, as well as those where the purchaser had strictly complied with all requirements.

If to obtain the benefits of that act the purchaser must show a strict compliance on his part with the law of 1883, the rules and regulations of the Land Board, and his contract, then, what did the Legislature mean by the words "in good faith," used twice in the same line of the healing Act of 1889?   If he had rigidly complied with the law, the rules and regulations of the Land Board, and his contract of purchase, how could his acts be otherwise than in good faith?   If one party to a contract does all that both the spirit and letter of the law, the obligations of his contract, and the rules prescribed by the other party thereto require of him, he certainly is not chargeable with bad faith.

The words "good faith," as used in this law, can and should be given a meaning.

They signify that the State will shield and protect the honest purchaser of its territory, though he may have made a mistake in the description given thereof; but that he who has attempted to defraud the State through a willful misdescription shall not become a beneficiary of the law in question.   When a strict compliance with all requirements is shown, good faith is presumed; but when the rules of the Land Board are not rigidly complied with, the question of good or bad faith becomes one of intent. To impose upon the purchaser of land from the State the burden of showing absolute accuracy of description of the land applied for, especially as regards the purposes for which it may be utilized, would introduce into his title an element of uncertainty, as well as possible injustice, which we do not believe was intended by the Legislature or the Land Board.

In fact, neither the statute nor the rules of the Land Board require the purchaser to state in his application to purchase the purposes for which the land is suitable; but as Nasworthy described the land as suitable for

pasture only, and the rules of the board declared that misrepresentation or false description should result in a forfeiture of the land, the uses for which the land was suitable became an issue in the case.

But the same rules of law apply to this description that do to those that were required, and if Nasworthy was honestly mistaken his purchase is protected.

The history of our State, past and current, shows that its possibilities are such that the honest purchaser of its soil ought not to be expected to penetrate the future, and with absolute certainty foretell the capabilities of the land he desires to purchase.

The time has been, within the memory of many persons now living, when large portions of the territory of Texas now devoted to successful farming were considered, by almost everybody, as suitable for grazing purposes only.

Appellant complains of the action of the court in excluding testimony offered to show the depth of soil and productiveness of lands adjoining the section in controversy.

As to the proposed testimony in regard to the depth of soil on an adjoining survey, as disclosed by digging a shaft, the bill of exceptions does not state how near the shaft was to the land involved; and we, perhaps, would not reverse the case because of the exclusion of this testimony.

But as to the other testimony offered and excluded, the bill of exceptions shows that the witness would have testified, "that he had owned and cultivated five acres of ground for several years, adjoining the land in controversy on the south; that the soil on said five acres was like the thinnest and poorest on the land in controversy, and that said five acres produced well the agricultural products of this country, without irrigation."

Next to the cultivation of the land in controversy, it occurs to us that the cultivation of similar land in the same vicinity would be one of the most satisfactory methods of determining the productive qualities of the land involved. When such questions as value or fitness for a particular use are involved, it is often permissible to use evidence which will enable the jury to draw conclusions by comparisons. 7 Am. and Eng. Encyc. of Law, 60.

The excluded testimony, if true, would have afforded a test exceedingly fair to appellees. The small tract cultivated was separated from this land only by an imaginary line, and its soil was similar to the " thinnest and poorest" on said land. This testimony tended to show that the soil on the land in suit was productive; a fact which appellees sought, by showing the character and depth of soil, to negative.

Of course, if this fact had been shown, it would not have conclusively proved that the land involved was agricultural land when Nasworthy made his application to purchase, because it requires sufficient and timely

rains, as well as productive soil, to make agricutural land. But the excluded testimony tended to show that the land was suitable for agricultural purposes.

It is true, as appellees contend, that if it had been shown that this land was agricultural land in 1883 and 1884, still it would not necessarily follow that Nasworthy had not acted in good faith in describing it as suitable for pasture only. He may have honestly thought so and been mistaken.

But the excluded testimony was admissible, because its tendency was to prove a material fact, proper to have been considered by the jury in determining the main fact.

The excluded evidence offered to prove that the year 1883 was a seasonable year was also admissible; but as that fact was proved by other witnesses, and not controverted, the error is harmless.

The charge of the court, as well as its refusal to give certain special charges asked by appellant, is complained of. The assignment of error as to the charges refused is too general; but as the case will be reversed, we have examined these charges and the charge given.

There is one omission in the court's charge, and one statement in it ought to have been omitted.

On all questions involving appellees' title to the land the burden rested upon them; the charge given was silent on this subject, and the special charges asked by appellant were sufficient to direct the attention of the court to the omission. After correctly telling the jury what the issue for their determination on the question of title was, and submitting that issue to them, the court charged as follows:

"And in this connection, you are instructed that the question is not whether the land in question is agricultural or pasture land, or was at the time Nasworthy made his application to purchase same," etc.

While it is true that this was not the controlling issue in the case, yet it was a subordinate question, pertinent to the main issue. If the land was shown to be agricultural land, especially if it was such at the time Nasworthy made his application to purchase, it was important testimony in behalf of appellant. If it was not agricultural land, that fact was very important to appellees. It is ordinarily sufficient for the charge of the court to inform the jury what the issues for their determination are, without attempting to explain what are not issues. Such attempts are often calculated to impress the jury with the belief that the court entertains certain views as to the weight of important testimony. Such was the tendency of the charge in question, and it should not have been given.

We have examined the case of Nobles v. Cattle Company, 69 Texas, 434, cited by appellees, holding that, as against a purchaser of school land under the Act of April 12, 1883, no one but the State can raise the question of fraud. That case was tried and decided on appeal before

the decision in Martin v. McCarty, and the purchaser was not attempting to avail himself of the benefit of a healing statute. If he had been guilty of fraud in obtaining the land from the State, that fact, as held in that case, only rendered his title voidable.

But in the case at bar, it being necessary for appellees to avail themselves of the healing Act of March 12, 1889, the law casts upon them the burden of showing that Nasworthy had acted in good faith in all he did in reference to the contract of purchase under which appellees claim.

For this reason this case is distinguishable from the one just cited.

Because admissible testimony was excluded, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 16, 1892.

Chief Justice FISHER did not sit in this case.