Charles Kurtzman v. A. P. Blackwell.

Decided May 4, 1899.

**1. State School Land—Sale—Validation—Cancellation.**

A sale of a school survey as detached and isolated public land, without actual settlement, subsequently canceled but reinstated before the provisions of the Acts of 1897, pages 113 and 160, validating such sales, went into effect, will not be regarded as having been canceled and the land resold to another because an application to purchase it as an actual settler was made by such other person between the time of the cancellation of the sale and its reinstatement, but before an illegality in the location had been validated, nor because another application for purchase was made after the validating acts went into effect.

**2. Same—Constitutional Law.**

The constitutional prohibition (article 7, section 4) against the granting of relief to purchasers of school land is not violated by the Acts of 1897, pages 113 and 160, validating sales of isolated and detached school sections; and those acts do not have the effect to cut off the right of any one accruing subsequently to the sale sought to be validated, and prior to their passage.

Appeal from Liberty. Tried below before Hon. L. B. Hightower.

*Stevens & Marshall,* for appellant.

*M. D. Rayburn* and *G. H. Pendarvis,* for appellee.

GARRETT, Chief Justice.—This was an action of trespass to try title brought by A. P. Blackwell against Charles Kurtzman for the recovery of 1280 acres of land. The defendant pleaded not guilty. There was a trial by the court without a jury, and judgment was rendered in favor of the plaintiff.

The land in controversy is survey No. 1020, in Liberty County, made for the school fund June 30, 1882, by virtue of Confederate scrip No. 791, issued to Medora A. Harris, by J. N. Dark, assignee. The alternate survey made for the owner of the certificate is situated in Hardin County. It was made October 23, 1881, and has been patented to the assignee. The two surveys are not contiguous to each other. The school survey in controversy was classified and appraised and the classification and appraisement were approved by the Commissioner of the General Land Office and certified by him to the county clerk of Liberty County prior to December 7, 1892. Contiguous to and adjoining the Medora A. Harris school survey on the north lies another school survey which then belonged to the State. This survey was sold to a settler December 15, 1894, and the survey in controversy then became isolated and detached from other public lands. On December 7, 1892, the Commissioner of the General Land Office sold the survey in controversy to one H. F. Thompson under the provisions of section 22 of the Act of the Legislature providing for the sale and lease of school and other public lands, approved April 1, 1887, and the amendment thereof approved April 8, 1889, chapter 99, Laws 1887, page 83, and chapter 56, Laws 1889, page 50, as detached and isolated public lands without actual settlement. Thompson complied

with all· the requirements of the law and paid interest, and his account was kept in good standing on the books of the Land Office until January 7, 1895, when the Commissioner canceled the sale on the ground that the survey was not isolated and detached from other public lands; but afterwards, on May 25, 1897, the Commissioner reinstated the sale, and the Treasurer accepted payment of the interest which had accrued in the meantime, and all interest has been fully paid up to the time of the trial below.    Neither Thompson ·nor anyone else claiming under him ever settled upon the land.    The plaintiff is the owner of Thompson's interest in the survey by mesne conveyances from him.

On January 10, 1895, one E. H. Judd settled upon the north half of the survey and applied to purchase the same as an actual settler.    His application was in all respects in conformity with the law, but the Commissioner rejected the same on June 5, 1895, and returned the money remitted with it on the ground that the survey was invalid, because it was not located contiguous to its alternate.    Judd remained upon the land until some time in August, 1895, when he removed therefrom, and in December, 1897, filed in the General Land Office a written relinquishment thereof to the State.

On December 15, 1896, the defendant Kurtzman moved upon the said north half of said survey, and has ever since resided thereon as a home, using, cultivating, and enjoying the same.

In December, 1897, on the day that Judd filed his relinquishment in the Land Office, Kurtzman made application for the purchase of the land as an actual settler, complying with the law in all respects; but the Commissioner rejected his application on the —— day of April, 1898, and returned to him the money which accompanied the same.

After the sale to Thompson it was decided by the Supreme Court that the survey made for the owner of a certificate and for the school fund by virtue of the act granting land to Confederate soldiers should be contiguous to each other, and that a separation of the surveys locating them in different counties would be illegal.    Von Rosenberg v. Cuellar, 80 Texas, 249.    And in a cause decided by this court, in which the Supreme Court refused a writ of error, it was held that where a survey of public school land was contiguous to another survey of public land it was not detached and isolated within the meaning of the law above referred to providing for the sale of detached and isolated sections without actual settlement, and that a sale such as was made in this case would be invalid.    Cameron v. State, 7 Texas Civ. App., 35.    The separate location of the surveys made by virtue of the Confederate scrip and the sales by the Commissioner of the General Land Office of public lands as isolated and detached which, under the construction of the courts, were not isolated and detached, were subsequently validated by acts of the Twenty-fifth Legislature.    Gen. Laws 1897, pp. 113, 160.    These acts went into effect on the same day, to wit, ninety days after adjournment of the Legislature, which occurred May 21, 1897.    The law validating the sales of isolated and detached sections purports to validate them "where the orig-

inal sales have not been canceled and the lands resold," and they were "legalized and made valid in all cases where such sales would have been valid if the lands so sold had in fact been isolated and detached; provided, that when applications have been made for the purchase of any such lands, in advance of placing the same on the market again, it shall not have the effect of a sale of such lands, nor of requiring the Commissioner of the General Land Office to award such lands to such applicants."

A contention of the defendant is that the sale to Thompson would not have been valid, although the survey had been isolated and detached from other public lands, because it had been located apart from its alternate, and therefore did not come within the terms of the act validating the sale as of an isolated and detached section. The meaning of the act, however, is that the sale should have been in other respects valid according to the law under which it was made, and the healing act undertook to validate that defect in the sale without reference to the regularity of the location; and when the healing act became a law it referred back to the original location and prevented all possible objection to its validity. Hence the act validating the sale must be construed as though the two surveys had been made contiguous to each other as required by law.

Had the sale to Thompson been canceled and the land resold? As we have seen, the Commissioner of the General Land Office canceled it on January 7, 1895, on the ground that the survey was not isolated and detached, but the land was never placed upon the market again and was never resold. Upon the contrary, the sale to Thompson was reinstated by the Commissioner as soon as the validating acts were passed, although before they had gone into effect. There was no sale to Judd, because at the time of his application there had been no valid location and survey of the land, and the forwarding of his application and the remitting of the money required as a cash payment was not the acceptance of any offer on the part of the State to sell this land, which, although it had become detached by the sale of the contiguous section, had not been located in compliance with the law, and the Commissioner was right in rejecting the application on that account. Judd also abandoned the land a few months after his settlement, long before the validating act was passed, and finally relinquished whatever interest he had to the State, but he had acquired no interest.

The defendant settled upon the land in December, 1896, but made no application for the purchase thereof until December, 1897, long after the validating acts had gone into effect. His settlement was not a purchase of the land, and there was nothing to prevent the application of the law to the sale made to Thompson. There can be no objection to the constitutionality of the law. Its effect is not to cut off the rights of any one accruing subsequent to the sale sought to be validated and prior to its passage. Nor is it in contravention of article 7, section 4, of the Constitution, prohibiting the Legislature from granting relief to the purchasers of school land. To the contrary, the law confirmed the sale and required the purchaser to complete his contract.

We do not deem it necessary to notice any of the other assignments of error presented in the brief of the appellant. The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.