STATE et al. v. BRADFORD et al.

No. 7439.

Court of Civil Appeals of Texas. Austin.

Feb. 5, 1930.

Appellants' and Appellees' Motions for Rehearing Overruled Feb. 26, 1930.

R. L. Bobbitt, Atty. Gen., C. W. Trueheart, of San Antonio, W. W. Caves, Asst. Atty. Gen., Geo. E. Shelley and F. C. von Rosenberg, both of Austin, and G. B. Smedley, of Fort Worth, for appellants.

Birge & Nelson, of Amarillo, Bonner, Bonner & Fryer, of Wichita Falls, Y. P. Broome, of Tulsa, Okl., Frank F. Allen, T. F. Morton, and Bryan, Stone, Wade & Agerton, all of Fort Worth, Carrigan, Britian, Morgan & King, of Amarillo, Cofer & Cofer, of Austin, Cook, Smith & McLynn, of Pampa, C. E. Cooper and Davidson & Williams, all of Tulsa, Okl., DeMontel & Sanford, of Wichita Falls, Don Emery, of Amarillo, Fitzgerald & Hatchitt, of Wichita Falls, H. S. Garrett, of Fort Worth, W. P. Z. German and Alvin F. Molony, both of Tulsa, Okl., Karl F. Griffith, R. C. Coffee and Marshall Newcomb, all of Dallas, A. A. Hatch, of Tulsa, Okl., Clayton Heare, of Shamrock, Jno. W. Hornsby, of Austin, R. H. Hudson, of Bartlesville, Okl., T. F. Hunter, of Wichita Falls, James & Conner, of Fort Worth, Geo. L. Kelly and Kilgore, Rogers & Montgomery, all of Wichita Falls, Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., Lackey & Lackey, of Stinnett, Lightfoot, Robertson & Scurlock, of Fort Worth, R. L. Batts, of Austin, Melton & Melton, of Chickasha, Okl., Penix & Penix, of Wichita Falls, Phillips, Trammell, Chizum & Price and Polk & Sansom, all of Fort Worth, Judge B. H. Powell, of Austin, W. H. Francis, A. S. Hardwicke, and Walace Hawkins, all of Dallas, Reynolds & Heare, of Shamrock, A. A. Ledbetter, of McLean, Burney Braly, of Fort Worth, Lewis Rogers, of Houston, Sanders & Scott, of Amarillo, E. G. Senter, of Dallas, Shannon, Oschner & Pheiffer, of Amarillo, Studer, Stennis & Studer, of Pampa, R. H. Templeton, of Wellington, Leslie A. Thompson, Jr., of Denver, Colo., Underwood, Johnson, Dooley & Simpson, of Amarillo, Vinson, Elkins, Sweeton & Weems, of Houston, W. Sherman White, of McLean, White, Wilcox, Taylor & Gardner, of Austin, F. J. Winter, of Houston, L. B. Woodson, of St. Louis, Mo., Works & Bassett, of Amarillo, and Jno. L. Young, of Dallas, for appellees.

BLAIR, J.

The state of Texas sued appellees in trespass to try title to recover an area of land in Gray and Wheeler counties, constituting the bed of the North fork of Red river, alleged to have been appropriated to the public school fund, either by section 2 of article 7 of the state Constitution, or by the Act of February 23, 1900 (Acts 26th Leg. 1st Called Sess. c. 11). As ground for recovery the state alleged that said river was a statutory navigable stream, in that it "retained an average width of more than thirty feet from cut bank to cut bank from its mouth up," at the time of and continuously since the making of the surveys and awards and the issuing of the patents in controversy; that the lines of these surveys crossed or partly crossed said navigable stream, in violation of article 5302 (Rev. St. 1925), and were therefore illegal to the extent of the inclusion of the river bed area; and that the awards and patents were likewise and to the same extent illegal and void as covering an area or portion of the public domain reserved by public policy and law from locations; and that, although the area in controversy was embraced within the lines and acreage of the surveys, title thereto was by necessary implication reserved to the state, in that the instruments evidencing the sales made no mention of and did not by express language sell or dispose of said area.

Appellants Caswell and Reed were made party defendants upon the allegation that they were asserting some interest in the land. They filed separate, but identical, answers, except as to the specific land claimed, contending that they had done all acts and things necessary to obtain oil and gas permits in virtue of the Mineral Act of 1917, and by their cross-action sought to have their rights to such permits established in the event the state recovered the land, as against the state and all appellees.

By amended pleadings the state pleaded that the Small Bill (Act March 3, 1929 [Gen. & Sp. Laws 41 St. Leg. c. 138]) had no application to the land in controversy, because this suit was pending at the time the act was passed, which made no reference to and did not purport to be retrospective as regards the subject-matter of this suit; and that, if the act should be held to be applicable to the subject-matter of this suit, then it was unconstitutional as being in violation of sections 4 and 5, art. 7, and section 59a of article 16 of the state Constitution. Appellees pleaded the act as perfecting their respective titles to whatever interest in the land in controversy it undertook to confirm, validate, quitclaim, relinquish, or grant.

Appellees' general demurrers to the state's petition and the cross-actions of Caswell and Reed were sustained and their respective suits dismissed upon their refusal to amend; hence this appeal.

■ As against the general demurrers sustained, the state's petition alleged sufficient

facts to constitute the North fork of Red river a statutory navigable stream at the time of and continuously since the making of the surveys and awards and the issuing of the patents in question. It alleged that the stream retained an average width of more than 30 feet from its mouth up, which is the only fact necessary to constitute a statutory navigable stream. It also alleged that the stream retained an average width of more than 30 feet from cut bank to cut bank from its mouth up, which brings it within the test and meaning of a statutory navigable stream as defined in the case of Motl v. Boyd, 116 Tex. 82, 286 S. W. 458, 467. See, also, Hoefs v. Short, 114 Tex. 501, 273 S. W. 785, 40 A. L. R. 833.

In this connection we also conclude that the specific allegations with respect to the upper reaches or portions of the stream, to the effect that "there is no permanent flowing water on the surface of the sand-bed, there being no springs or source of water other than rainfall," but that "about four or five times a year" the stream runs "full channel * * * without overflow * * * from rainfall," do not militate against the general allegation that the stream retained an average width of more than 30 feet from its mouth up; and the facts so alleged bring that portion of said stream clearly within the test and meaning given a statutory navigable stream in the case of Motl v. Boyd, supra. In that case it was held that Spring creek was a statutory stream, because it "retained an average width from its mouth up of more than 30 feet * * * between the banks * * * although the water flow therein in ordinary seasons is less than 30 feet of this width"; that "a water course, river, or stream consists of a bed, banks, and a stream of water"; and that:

"The bed of a stream is that portion of its soil which is alternately covered and left bare as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during an entire year, without reference to the extra freshets of the winter or spring of the extreme drouths of the summer or autumn. * * * The banks of a stream or river are the water-washed and relatively permanent elevations or acclivities at the outer lines of the river bed which separate the bed from the adjacent upland, whether valley or hill, and served to confine the waters within the bed and preserve the course of the river when they rise to the highest point at which they are still confined to a definite channel."

There can be no question but that the facts alleged in this case are much stronger in support of a statutory navigable stream than the facts proved and found to constitute a statutory navigable stream in either the Motl v. Boyd Case or the Hoefs v. Short case. In addition to the above facts the petition alleges

that the river bed area involved begins on the east line of Wheeler county and runs west entirely across same and across a considerable portion of Gray county. It is the same stream which in the case of United States v. Texas, 162 U. S. 1, 16 S. Ct. 725, 40 L. Ed. 867, was claimed to be the main Red river and the northern boundary of the state, evidence being introduced to the effect that it was longer, wider, and drained more territory than did the South fork, which was declared to be the boundary line in that suit.

■ The facts alleged in the petition show the survey lines in question to have crossed or partly crossed a statutory navigable stream within the meaning and effect of article 5302, and in violation thereof, and therefore the surveys and awards made and patents issued, in so far as the river bed area was included or affected, are void as covering land reserved from location under the public policy and laws of this state. As bearing upon the meaning and effect of article 5302, see, also, City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563; New York & Tex. Land & Cattle Co. v. Thomson, 83 Tex. 169, 17 S. W. 920; Swisher v. Grumbles, 18 Tex. 164; Landry v. Robison, 110 Tex. 295, 219 S. W. 819; State v. Grubstake Investment Ass'n, 117 Tex. 63, 297 S. W. 202; State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181; Petty v. City of San Antonio (Tex. Civ. App.) 181 S. W. 224; Bunnell v. Sugg (Tex. Civ. App.) 135 S. W. 701. As supporting the proposition that the surveys, locations, and awards made and the patents issued are void as covering a portion of the public domain reserved from locations, see: Sherwood v. Fleming, 25 Tex. Supp. 408; Gammage v. Powell, 61 Tex. 629; Winsor v. O'Connor, 69 Tex. 571, 8 S. W. 519; Jumbo Cattle Co. v. Bacon & Graves, 79 Tex. 5, 14 S. W. 840; State v. Delesdenier, 7 Tex. 76; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S. W. 865; Wright v. Hawkins, 28 Tex. 452; Stone v. United States, 2 Wall. 525, 17 L. Ed. 765.

■ Nor do we sustain the view of appellees in this connection that the question of determining the navigability of this stream, as defined by the statute, was vested in the surveyors who made the surveys and locations and the land commissioner who approved them and made the awards and issued the patents, and that it will be conclusively presumed, absent any allegation of fraud or collusion, that these officers in the exercise of their discretion and honest judgment found the stream to be nonnavigable and made the surveys, locations, and awards and issued the patents in question, including therein the river bed area, as a part of the land sold. The question of navigability of a stream, within the meaning and purview of article 5302, is one for judicial ascertainment, and is not a question left to the discretion and judg-

ment of ministerial officers. Oklahoma v. Texas, 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771; Harrison v. Fite (C. C. A.) 148 F. 784; Gauthier v. Morrison, 232 U. S. 458, 34 S. Ct. 384, 58 L. Ed. 680. The width of the stream between its cut banks was the only matter for the surveyors to determine in making the surveys and locations in question. This involved no exercise of discretion or judgment on the part of these purely ministerial officers, but was a mere matter of measurement which could be determined with precision by a surveyor. As regards the facts of measurement of the width of a stream, the land commissioner can only determine such facts as may appear in the field notes and from calls for a stream. So here, as in the case of Rosborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791, 792, 43 S. W. 1033, the question for determination under the allegations of the petition "is as to the power to grant that which, by the policy of all nations governed by the principles of the civil or common law, is retained for the public use," and title to which under all the authorities passes to private ownership only by "express and particular language" evidencing that intention on the part of the Legislature acting for sovereign authority under constitutional provision. Packard v. Hynes (Tex. Civ. App.) 34 S. W. 794, Id. (Tex. Civ. App.) 44 S. W. 548, Id., 92 Tex. 44, 45 S. W. 562; Roberts v. Terrell, 101 Tex. 577, 110 S. W. 733; De Merit v. Robison, 102 Tex. 358, 116 S. W. 796; Landry v. Robison, 110 Tex. 295, 219 S. W. 819; State v. Grubstake Invest. Ass'n, 117 Tex. 63, 297 S. W. 202; Massachusetts v. New York, 271 U. S. 65, 46 S. Ct. 357, 70 L. Ed. 838. And for the same reason here, as was held in Rosborough v. Picton, supra: "No subsequent recognition or confirmation of a grant made by a ministerial officer attempting to pass the soil under the sea would be presumed."

Since no title passed through the attempted sales under which appellees claim the river bed area in controversy, it becomes necessary to construe the Small Bill to determine whether it vests in appellees any title or interest to said area. Sections 1 and 2 of the Act (Gen. & Sp. Laws 41 St. Leg. [1929] c. 138) read as follows:

"Section 1. All patents to and awards of lands lying across or partly across water courses or navigable streams and all patents and awards covering or including the beds or abandoned beds of water courses or navigable streams or parts thereof, which patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, are hereby confirmed and validated.

"Sec. 2. The State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the lands, and minerals therein contained, lying across, or partly across water courses or navigable streams, which lands are included in surveys heretofore made, and to which lands patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, and the State of Texas hereby relinquishes quit-claims and grants to patentees and awardees and their assignees all of the beds, and minerals therein contained, or water courses or navigable streams and also all of the abandoned beds, and minerals therein contained, of water courses or navigable streams, which beds or abandoned beds or parts thereof are included in surveys heretofore made, and to which beds or abandoned beds, or parts thereof, patents or awards have been issued and outstanding for a period of ten years from the date hereof, and have not been cancelled or forfeited; provided that nothing in this Act contained shall impair the rights of the general public and the State in the waters of streams or the rights of riparian and appropriation owners in the waters of such streams, and provided further that with respect to lands sold by the State of Texas expressly reserving title to minerals in the State, such reservation shall not be affected by this Act; nor shall relinquished or quit-claim any number of acres of land in excess of the number of acres of land conveyed to said patentees or awardees in the original patents granted by the State, but the patentees or awardees and their assignees shall have the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such water courses or navigable streams, that they have in the uplands covered by the same patent or award; provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream within this State, as defined by Article 5302, Revised Statutes of 1925."

The state's contention is not sustained that this act has no application to the land in controversy, not because it was not intended to be retroactive in the sense of any curative act, but in the sense that it would not take hold of the subject-matter of this suit which was pending when the act was passed, absent a very clear intention of the Legislature expressed in the act to do such an unusual thing. It is clear from a reading of the act that the Legislature intended it should operate as a retrospective act. It undertakes to operate and apply to all Spanish and Mexican grants and titles which were subsequently recognized by the Republic of Texas, and to apply to all the lands of the character described which had been awarded or patented for a period of ten or more years. Clearly the act intended to operate and apply to all land coming within the class described, whether or not the state had instituted suit for its recovery or to cancel outstanding

awards or patents. This is evidenced by the fact that the Legislature undertook in the act itself to carefully and specifically provide what land or uses of the land were excluded from the operation of the act, and the land for which the state had instituted suit and to cancel outstanding awards and patents was not specifically excluded from the operation of the act. The rule of law with respect to this question is stated in Cooley's Constitutional Limitations, p. 787, as follows:

"Nor is it important in any of the cases to which we have referred, that the legislative act which cures the irregularity, defect, or want of original authority, was passed after suit brought, in which such irregularity or defect became matter of importance. The bringing of suits vests in a party no right to a particular decision; and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is rendered."

This court held, in the case of State v. Powell, 63 Tex. Civ. App. 405, 134 S. W. 746 (writ of error refused), that notwithstanding a prior judgment in favor of the state canceling a patent, a validating act was effective, even though no express mention was made of the judgment in the validating act. The case of Linn v. Scott, 3 Tex. 67, is cited by the state in support of the contention made by it, but a consideration of that case and the question there for decision leads to the conclusion that the court only intended to hold that the Legislature could not by a validating or curative act give a right or cause of action where none existed prior to the enactment of such law.

█ It is also clear from a reading of the emergency clause that the Legislature intended that the Small Bill should apply to all land of the class described whether the state had filed suit for its recovery or not. The material portion reads (section 4) as follows:

"The fact that surveys and parts of surveys have heretofore been made across, partly across water courses in this State, now claimed to be navigable streams, that such surveys, and parts of surveys include the beds * * * of such water courses, that patents and awards have issued for such surveys and parts of surveys, and patentees and awardees and their assignees have held possession of such surveys and parts of surveys, including beds * * * of such water courses, and have paid taxes thereon * * * that claims are now being made which seriously affect and cloud the titles of patentees and awardees and their assignees thereto, impairing the confidence of the people in grants and titles emanating from the State of Texas and causing great public unrest, creates an emergency," etc.

The facts recited in the emergency clause parallel those alleged in this suit, and the language, "that claims are now being made which seriously affect and cloud titles," under reasonable construction could refer to the claim being made by the state in this suit which was pending at the time. But if the statute should be ambiguous in this respect, then outside sources may be looked to for explanation, and, when that is done, there can be no question but that this suit was at least in part responsible for the passage of the act. Nor can we conceive of how the Legislature would grant relief to one group of awardees and patentees with respect to illegal patents and awards issued by the ministerial officers of the state and at the same time refuse to grant that relief to another group in the same position merely because a suit had been filed seeking to cancel the awards and patents of the latter group.

█ The state also contends that the Small Bill is retroactive and void as a validation or confirmation statute, in that it attempts to validate and confirm an initial right, and an irregularity in its origin, where no such right existed prior to the enactment of the statute. The theory of the state is that the surveys, awards, and patents in controversy were wholly void and granted no right which could be validated or confirmed, because the ministerial officers who made and issued them had no express authority from the Legislature to sell or dispose of the river bed reserved by law from locations, and because no language in the instruments evidencing the original sales, either expressly or by unavoidable construction, attempted to sell said area, and its mere physical, as distinguished from a title, inclusion of the area, could not justify the statute. The contention is not sustained.

It is admitted by the state that the Legislature could have in the first instance authorized the inclusion of the river bed area in the surveys and patents, and certainly the law is too well settled to necessitate a discussion of the question that the Legislature can now supply retrospectively the authority which was lacking in the ministerial officers at the time they performed the acts complained of by the state, so that such acts will be as effective as they would have been had the power been originally given, absent any constitutional inhibition, and provided such law does not impair any vested right. Nor does it make any particular difference in this connection whether the Small Bill is considered as ratifying the unauthorized acts of the state's agents or as supplying the lack of power in its ministerial officers to pass title to the area in controversy; the title did pass by and through the enactment of the statute, and such title relates back and becomes effective as of the dates of the prior ineffective attempts to pass title, subject, however, to constitutional inhibitions and vested rights if any existed. That an initial right existed in the original purchasers and their assigns which could be validated or confirmed by the act, or that a valid consideration existed for

the act, if considered as a relinquishment, quitclaim, or present grant of the area in controversy, is beyond dispute under the allegations of the petition.

 The petition alleged that the entire area, whether appropriated under railroad donation certificates or through sales of school lands, constituted land reserved by law from locations; that this river bed area was included in the survey lines and acreage of the surveys in question and covered by the awards and patents; and that same was paid for by the purchaser who had ever since paid the taxes on the land. Under these facts the original purchasers and their assigns had a right or claim arising out of the facts that they had in good faith paid their money to the state for illegal awards and patents issued by its ministerial officers. This character of right or claim has existed at least since 1883, by virtue of article 5411, the material portion of which reads as follows:

"Upon proper proof that money has been in good faith paid into the State Treasury upon lands for taxes * * * and purchase money, for which * * * patents cannot legally issue, or upon lands on which patents have issued and afterwards are legally canceled, the Comptroller may issue his warrant in favor of the proper parties for the amounts so paid."

 This statute is in its very nature both retrospective and prospective, in that it expresses the public policy of the state with respect to the righting of the wrongs committed by its agents who have exceeded their power in dealing with individual citizens for the state. Nothing short of such recognition of right and affording a remedy for it would excuse the state from the charge of lack of honesty and fair dealing with its citizens, because the state could not honestly and fairly take their money in payment for land and the taxes thereon, and then take the land back without some character of adjustment. The right so given relates back and becomes effective as of dates of purchases of land under illegal awards or patents, or at least to the dates of the illegal awards or patents. The remedy afforded is effective from and after the cancellation of the award or patent. But this remedy, refund of purchase money and taxes paid, is not exclusive and does not preclude the Legislature from affording another remedy in settlement of the right so recognized, such as is afforded by the Small Bill, which simply undertakes to repay purchasers who have bought and paid for land and the taxes thereon under illegal patents issued by the ministerial officers of this state by validating, confirming, relinquishing, quitclaiming, and granting such a right or interest in and to the land as is not antagonistic or repugnant to any of the public uses to which the land had been theretofore reserved. By pleading the act appellees have agreed to ac-

cept such right or interest as is validated or granted in settlement of their right or claim arising by virtue of the illegal patents and awards in controversy and under which they have in good faith paid for the lands and all taxes on same. So whether the act be considered as a validation act or as a present grant, it is valid, because the state as sovereign has the power to determine the disposition to be made of beds or channels of navigable streams belonging to the state, provided the exercise of such power is not repugnant to some constitutional inhibition or does not impair already vested rights. State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181.

 But the state contends that the Small Bill is repugnant to the public uses authorized by the Conservation Amendment of 1917 (section 59a of article 16 of the state Constitution) in the area in controversy. The contention cannot be sustained because the act either expressly or by a necessary and reasonable inference excepts from the operation of the statute all public, navigation, riparian, and other uses to which the beds of statutory navigable streams or water courses had been theretofore reserved under the public policy and laws of this state. In other words, we interpret the Small Bill to validate or grant only such right of possession and use of the surface of the area in controversy as is not repugnant to the public uses to which said river bed had been theretofore reserved under the public policy and laws of this state, and the right to appropriate all minerals found in or underneath the surface of the river bed or channel, provided the taking of the minerals does not unreasonably interfere with any right or use of the public to which the area has been reserved. Nor can the language of the Conservation Amendment be construed as a law for the protection or conservation of the minerals that might be found in or underneath the beds of navigable streams. Minerals as such are specifically and fully dealt with by other legislation. Nor is there any merit to the suggestion that because the Small Bill failed to provide specifically for ingress and egress for the uses to which the river bed is reserved to the public, it interferes with and curtails such uses. It is held in the case of State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181, that the state had no right of way or way of necessity over private lands lying upon and bounding navigable waters, so the Small Bill could not take away a right that did not exist. The state may care for the matter of ingress and egress under its power of eminent domain, at least sufficient for the public uses to which the lands are reserved. Anderson v. Polk, 117 Tex. 73, 297 S. W. 219.

And certainly, if the Conservation Amendment inhibits the Legislature from enacting the Small Bill validating or granting certain

rights and uses to appellees as individuals and corporations, in the river bed area in controversy, then the same inhibition would apply to purchasers of the school fund's right or interest and to any individual or corporation who might obtain an oil and gas permit under the Mineral Act, and a recovery of the area for the use and benefit of the school fund by this suit would amount to nothing. But in this connection see State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181, in which it was held that the Mineral Act of 1917 is not repugnant to older statutes relating to navigable river beds.

The state further contends that, since, in pursuance of the holding in the case of Hogue v. Baker, 92 Tex. 58, 45 S. W. 1004, the area in controversy was appropriated to the public school fund by the Adjustment Act of February 23, 1900, in aid of and effectuating the intent of section 2 of article 7 of the Constitution, the school fund's right or title became vested so that the Legislature could not by the subsequent Small Bill (Act March 3, 1929 [Gen. & Sp. Laws 41 St. Leg. (1929) c. 138]), revoke such right or title. The contention cannot be sustained under the facts alleged in the petition.

It is alleged that a large portion of the area in controversy was surveyed and the locations made by virtue of certain railroad donation certificates, the even-numbered sections for the public school fund, and the odd numbered sections for the owners of the certificates; that a portion was surveyed under railroad donation certificates in a solid block; that a portion was surveyed under the alternate section school plan in consideration of locator opening and clearing navigable rivers for the state; and that the Davidson survey was sold in 1904, as unsurveyed school land under the Act of February 23, 1900; that the original field notes and surveys on all the sections located under donation certificates were made in 1873, 1875, or 1877, either under the Donation Act of 1854, or chapter 122 of Act of 1874, or Act of March 10, 1875, and the alternate or even-numbered school sections so located were sold from 1897 to 1900, either under chapter 12a, title 87, or the amendatory act of May 19, 1897, and the Davidson survey was sold as unsurveyed school land in 1904, under the act of February 23, 1900; that the area in controversy was included in the survey lines and acreage of all of said sections, and was paid for by purchasers, and the awards and patents sought to be canceled by this suit were based upon said field notes, maps, and plats of the surveys filed and recorded in the general land office; and that purchasers or their assigns were in possession, holding the land adversely to the state or school fund, by virtue of said illegal awards and patents.

▆▆▆▆ As preliminary to the vested right claim of the school fund, the following prop-ositions of law as applied to the facts alleged seem to control the question and to defeat the claim:

(1) That public school lands belong to the state as fully as before they were appropriated for that purpose, either under section 2 of article 7 of the state Constitution, or by the Adjustment Act of February 23, 1900, in aid of the said constitutional provision. Smisson v. State, 71 Tex. 231, 9 S. W. 112; Greene v. Robison, 109 Tex. 367, 210 S. W. 498.

(2) That since the state is owner it can determine, through its Legislature, how the state shall discharge any and all obligations resting on it as owner of the river bed area of statutory navigable streams, including the disposition of any minerals that lie therein; and, of course, may adjust and validate title and settle any claim arising by virtue of illegal awards and patents being issued by its ministerial officers covering such area, and for which the purchasers have in good faith paid the purchase price and taxes thereon. subject to vested rights. State v. Black Bros., 116 Tex. 615, 297 S. W. 213, 53 A. L. R. 1181; T. C. Ry. Co. v. Bowman, 97 Tex. 417, 79 S. W. 295; Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322.

(3) That the only right or interest the school fund has in the area is in virtue of the Act of February 23, 1900, in aid of section 2 of article 7 of the Constitution, because prior to that time the river bed area of navigable streams was reserved solely for public uses under the public policy and laws of this state; and by the appropriating act the school fund only acquired such rights in or uses of said area as are not repugnant to the public uses to which they are reserved, and to vested rights which in law or equity were prior and superior to any right or interest acquired by the school fund under the act.

(4) That the Act of February 23, 1900, appropriated to the school fund and authorized the sale of such rights or uses in and of the beds or channels of statutory navigable streams as were not reserved for the uses of the public, and except such portions as were not "held, occupied or claimed by any person or association or corporation, adversely to the State," or to the school fund, which became a part of the school land only when and after recovered by suit of the state, through its Attorney General, or otherwise. Section 8, Act Feb. 23, 1900 (Acts 26th Leg. 1st Called Sess. c. 11). Or, as was held in the case of Juencke v. Terrell, 98 Tex. 239, 82 S. W. 1025, 1026: "The act under construction applied only to such lands as appeared upon the maps and records of the General Land Office not to be claimed by other parties, and to such as had been adjudged to the state, if ever so claimed."

▆▆▆▆ So with respect to the Davidson survey, sold as unsurveyed school land in

1904, by virtue of the act of February 23, 1900, the entire interest vested in the school fund passed to the purchaser, because that act appropriated the river bed area included in the survey to the school fund, subject to public uses, and authorized the sale of said area. The area was paid for in good faith by the purchaser, and the school fund received the purchase price, and the instrument of conveyance reserved no interest in the area to the school fund. So if there was a statutory reservation of minerals applicable to this school land at the time the Small Bill was enacted, on which question we do not pass, then the facts pleaded bring the case clearly within the rule announced in the case of Greene v. Robison, 109 Tex. 367, 210 S. W. 498, to the effect that a mere statutory reservation of minerals to the school fund, absent specific reservation in the instrument of conveyance, will not suffice as against a validation or confirmation act. And for the reasons stated in that case, the Small Bill, with respect to the Davidson survey, is not unconstitutional as granting relief to purchasers of school land (Const. § 4, article 7); nor as an appropriation of public land to other than school purposes (Const. § 5, art. 7); nor as a mere gift of the school land, when considered as a validation or confirmation act. Flannagan v. Nasworthy, 1 Tex. Civ. App. 470, 20 S. W. 839; Kurtzman v. Blackwell, 21 Tex. Civ. App. 222, 51 S. W. 659 (writ of error refused).

 With respect to the remainder of the area in controversy, there is no merit, under the facts and law stated, to the vested right claim of the school fund for two reasons:

(1) The act of 1900 did not appropriate to the school fund any land "held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund," until actually recovered through suit of the state, or otherwise. Section 8, Act Feb. 23, 1900; Juencke v. Terrell, 98 Tex. 237, 82 S. W. 1025; section 2, art. 14, state Constitution. The petition alleged that prior to 1900 all the area in controversy, except the Davidson survey, had been included in the lines and acreage of the surveys, and that field notes, plats, maps, etc., had been filed in the general land office, and upon which the awards and patents sought to be canceled by this suit were issued prior to 1900, and under which the awardees and patentees, or those claiming for or under them, were in possession adversely to the state, or school fund. The Small Bill validated, confirmed, quitclaimed, relinquished, or granted to awardees and patentees and their assigns such right and title in said area as would not be repugnant to the public uses to which the area had been theretofore reserved, before the area had been adjudged to the state or school fund. And since the school fund had no vested right or

interest in the area under the terms of the appropriating statute, the state, as owner, through its Legislature, had the power to determine the disposition it would make of the beds of statutory navigable streams, including any minerals that may be therein. And clearly, since the school fund had no vested right in the land, the provisions of sections 4 and 5, art. 7, of the state Constitution, as to the sale and disposition of school lands or funds, have no application.

(2) Since the title to land appropriated to the public school fund remains in the state after appropriation as before, the state, as such owner, has the power by legislative act to validate and confirm any claim of title which in law or equity is prior and superior to any right or interest the school fund obtained through the appropriation. The converse of this rule was announced by this court in the case of Eyl v. State, 37 Tex. Civ. App. 297, 84 S. W. 607, 611 (writ of error refused) where it is held:

"At the time of the location of the veteran donation certificates under which appellants claim the land in controversy, it had already been appropriated to the public free school fund, either by the locations and surveys by virtue of the certificates under which appellee claims, or by the act of February 3, 1883, and therefore was not subject to appellants' location; and the records of the General Land Office and of the county surveyor of Menard county at that time gave notice of such prior location and surveys and consequent appropriation. Const. 1876, § 2, art. 14; Adams v. Railway, 70 Tex. 252, 7 S. W. 729; Besson v. Richards, 24 Tex. Civ. App. 68, 58 S. W. 611."

Nor can it make any difference in this connection whether the title validated was void or only voidable, because under all the decisions such was a matter of which the state alone, if disposed, might have taken advantage. Smith v. McGaughey, 87 Tex. 61, 26 S. W. 1073; Barrow v. Gridley, 25 Tex. Civ. App. 13, 59 S. W. 602, 913; Bunnell v. Sugg (Tex. Civ. App.) 135 S. W. 701, in which this court held that the contention that a survey is void on account of crossing a navigable stream is not available against a patent issued by the state on the part of one claiming under a junior grant. See, also, Millar v. Ward (Tex. Civ. App.) 124 S. W. 440; note, L. R. A. 1918D, 597; State v. Powell, 63 Tex. Civ. App. 405, 134 S. W. 746 (writ of error refused). This rule is confirmed as the policy of this state by articles 5458 and 5459, R. S. 1911, providing that after a lapse of one year an award is conclusive evidence that all requirements of law with reference to a sale have been complied with, except as against the state. Herndon v. Robison, 114 Tex. 446, 270 S. W. 159; Gattison v. Meyer (Tex. Civ. App.) 297 S. W. 900. See, also, Flannagan v. Nasworthy, and Kurtzman v. Blackwell, supra.

It is true that some of the older cases, decided prior to the adoption of section 2 of article 14 of the Constitution, and prior to the passage of section 8 of the Act of 1900, here under construction, authorizing the Attorney General to bring suit for land held or claimed adversely to the state or school fund, held that the particular patents and awards considered were wholly void and did not prevent subsequent valid locations upon the land. However, in the case of Juencke v. Terrell, supra, which construed the above constitutional and statutory provisions, and in many cases which follow it, it is held that, where land has been apparently appropriated by the issuance of patents and awards based on field notes, maps, etc., of record in the general land office, or by adverse possession, such land is not thereafter subject to be appropriated to the school fund or subject to sale or disposition by the state until the outstanding patents and awards or claims under adverse possession have been canceled, or determined and the land recovered; and that subsequent files or locations upon such land are ineffective; and that patents and awards or possession cannot be attacked or questioned, except at the suit of the state alone. Or, as is said by Judge Gaines in Juencke v. Terrell, supra, with respect to section 2, art. 14, of the Constitution:

"This provision does not prohibit the Legislature from providing for the sale of such lands; but it very clearly evinces the policy of the state not to encourage litigation by permitting the acquisition from the state of lands which appear upon the official records, or by actual occupancy to be claimed adversely to it. It should not lightly be assumed that the Legislature intended to depart from that policy."

It is clear, under the Eyl Decision, that if the school fund may be regarded merely as a junior grantee, the right or interest of appellees is prior and superior in equity, because appellees and their predecessors in interest purchased the land prior to the act of 1900, except the Davidson survey which is disposed of under another proposition, and paid the purchase price and the taxes thereon; and they certainly have a claim of title of which the Legislature can take cognizance and validate or confirm. It is also clear that since the appropriating act of 1900 specifically provided that the state might at its option recover any land held adversely to the state or school fund, the Legislature intended that any right or interest passing by that act to the school fund would be subject to prior equities of adverse claimants. That being true, the state, as owner of such appropriated land, could adjust such equities as it saw fit, and certainly, through its Legislature, validate any title or settle any claim arising by virtue of illegal awards and patents being issued by its ministerial officers covering such area, and for which the purchasers had in good faith paid the purchase price and taxes thereon. This is what the Small Bill undertook to do, and whether it be considered as a validation or confirmation act, or as a relinquishment, quitclaim, or present grant, it is valid for that purpose.

Under the same reasoning appellants Caswell and Reed have no vested interest, and the court correctly sustained the general demurrers to their cross-actions.

The state admits that the Small Bill validated or confirmed all the surveys with respect to the upland covered by the patents and awards, and that question need not be discussed, other than to say that unquestionably it does so.

We conclude that the court erred in sustaining the general demurrers and holding that the petition alleged insufficient facts to constitute the North fork of Red river a statutory navigable stream or water course, and the judgment in this respect is reversed and remanded for a trial of that issue. But with respect to the action of the trial court sustaining the general demurrer and holding that the Small Bill validated or granted appellees such right or interest in the area in controversy as we have herein construed that act to confer, we sustain the action of the trial court and affirm the judgment in that respect. And with respect to the action of the trial court in sustaining the general demurrers to the cross-action of appellants Caswell and Reed, we affirm the judgment.

Affirmed in part, and reversed and remanded in part.